IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | | |
|---|---|---|---|
| **MIDWESTERN GAS** | ) | | |
| **TRANSMISSION COMPANY,** | ) | | |
| | ) | **Case No:** | **3:06-cv-0255** |
| Petitioner, | ) | | 3:06-cv-0256 |
| | ) | | 3:06-cv-0260 |
| | ) | | 3:06-cv-0270 |
| v. | ) | | 3:06-cv-0271 |
| | ) | | 3:06-cv-0281 |
| **VARIOUS ACRES OF LAND,** | ) | | 3:06-cv-0288 |
| | ) | | 3:06-cv-0290 |
| Respondents. | ) | | 3:06-cv-0291 |
| | ) | | 3:06-cv-0292 |
| | ) | | 3:06-cv-0299 |
| | ) | | 3:06-cv-0304 |

## MEMORANDUM AND ORDER

Pending before the court in this land condemnation action is a Motion for Partial Summary Judgment to Establish the Date of Taking as a Matter of Law filed by the petitioner, Midwestern Gas Transmission Company ("MGT").[1] (*See* Case No. 06-255, Docket No. 50; Case No 06-256, Docket No. 44; Case No. 06-260, Docket No. 35; Case No. 06-270, Docket No. 35; Case No. 06-271, Docket No. 39; Case No. 06-281, Docket No. 36; Case No. 06-288, Docket No. 33; Case No. 06-290, Docket No. 46; Case No. 06-291, Docket No. 38; Case No. 06-292,

---

[1] As is clear from the caption, the pending motion involves twelve related cases, each of which concerns a tract of land in Sumner County, Tennessee. The petitioner, MGT, filed one, identical motion and statement of facts for all twelve cases. On July 27, 2009, five landowners filed identical responses, and, on August 3, 2009, six landowners (referred to in briefing as the "McClellan defendants," presumably because their counsel is Mr. McClellan) filed their identical responses. Despite the fact that the landowner in Case No. 06-299 is, according to the case docket, represented by Mr. McClellan, no response under that case number was filed.

1

Docket No. 35; Case No. 06-299, Docket No. 35; Case No. 06-304, Docket No. 35.) For the reasons discussed herein, MGT's Motion will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

MGT is in the business of transporting natural gas.[2] In October 2004, MGT formulated a plan to extend its existing natural gas pipeline, which is sixteen inches in diameter, from Portland, Tennessee to Hartsville, Tennessee, a distance of nearly thirty-one miles. This plan affected numerous landowners, as the proposed pipeline would run through private property.

On June 6, 2005, in conjunction with its proposed pipeline, MGT filed an application with the Federal Energy Regulatory Commission ("FERC") for a certificate of public convenience and necessity, as required by the Federal Natural Gas Act. On March 10, 2006, MGT received this certificate from the FERC. However, some potentially affected landowners requested that the FERC conduct a rehearing as to the issuance of the certificate.

While MGT was in the process of obtaining a certificate from the FERC, MGT engaged in negotiations with affected landowners to acquire easements and rights-of-way over the landowners' property. By March 2006, MGT had come to compensation agreements with many affected landowners and thereby had privately acquired easement interests over forty-eight percent of the land affected. Unable to come to compensation agreements with the remaining landowners, MGT filed this suit on March 31, 2006, seeking to condemn the property at issue in these cases ("the Property").

---

[2] The background undisputed facts are drawn from MGT's Complaint in this matter, MGT's Motion for Possession and attached exhibits, and from MGT's Statement of Material Undisputed Facts in Support of Motion for Partial Summary Judgment. (*See* Case No. 06-255, Docket Nos. 1, 4 and 52.)

On May 26, 2006, this court entered an order that provided MGT with "a temporary right of entry" for reasonable ingress and egress over the Property for the purposes of conducting pre-construction activities, "including, but not limited to, environmental surveys, archeological surveys and all other necessary surveys, examinations, and tests" on the Property. (*See* Case No. 06-255, Docket No. 19.)[3] This Order also provided that MGT would not obtain "the full right of possession" and "permanent injunctive relief and right of entry" as to the Property until the FERC issued an order on the merits denying the request for rehearing and MGT received a letter of approval from the Director of the Office of Energy Projects ("DOEP") (or his designee) to begin construction of the proposed pipeline. (*Id*.)

On July 26, 2007, MGT notified the court that the FERC had issued a merits order denying the request for a rehearing, and that MGT had received a letter of approval from the DOEP. MGT stated that, therefore, it would "exercise the full right of possession" over the Property, consistent with the plan outlined in the court's May 26, 2006 Order. (*See* Case No. 06-255, Docket No. 23 at 1.) With the trial dates in these cases approaching, MGT has now filed a motion that seeks to establish, as a matter of law, "the date of taking for the permanent easement" as July 26, 2007, that is, the date that MGT exercised the "full right of possession" over the Property. (*See* Case No. 06-255, Docket No. 50 at 1.)

---

[3] Technically, the tract at issue in Case No. 06-304 was not subject to this Order (or the subsequent July 26, 2007 filing discussed below), but was subject to another Order, of similar effect, also issued on May 26, 2006. (See Docket No. 15.) Neither party argues that the land at issue in Case No. 06-304 should be treated any differently from the other tracts of land at issue here. Additionally, the response to the Statement of Undisputed Facts filed in Case No. 06-304 does not dispute that the May 26, 2006 Order established a temporary easement. (Docket No. 43 at 1.)

3

Case 3:06-cv-00288   Document 37   Filed 08/05/09   Page 3 of 8 PageID #: 201

## ANALYSIS

**I.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'"  *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law.  *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).  To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial."  *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).  "The mere existence of a scintilla

of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II. The "Date of Taking" for the Permanent Easement

At the outset, it is important to clarify what MGT is asking the court to do. MGT is not asking the court to rule that there was no compensable taking or activity during the time that MGT was conducting "environmental surveys, archeological surveys and all other necessary surveys, examinations, and tests," on the Property, that is, during the period in which MGT had a "temporary right of entry" as to the Property. (*See* Case No. 06-256, Docket No. 23 and Docket No. 54 at 2.) Indeed, MGT concedes that the land owners of the Property are "entitled to just compensation for use of the temporary easement," and that the dates of the temporary easements (and corresponding compensation) will be determined at trial. (*See* Case No. 06-256, Docket No. 45 at 1 and Docket No. 54 at 2.) All MGT looks to do, then, is establish, as a matter of law, that the date of the *permanent* easement and full possession was July 26, 2007. (*Id.*)

MGT seeks resolution of this issue because, it claims, for purposes of establishing just compensation, there is a "distinction between a permanent easement and [a] temporary easement

5

and how those two easements are valued differently under federal law." (*See* Case No. 06-256, Docket No. 54 at 2.) While MGT, remarkably, cites no law for this proposition, the court has located case law that indicates that just compensation for the taking may be measured differently for temporary versus permanent easements. *See Portland Nat. Gas Transmission Sys.v. 19.2 Acres of Land*, 195 F. Supp. 2d 314, 322 (D. Mass. 2002). In *Portland*, citing cases from multiple jurisdictions, the court stated, "to calculate the value of the property actually taken as a result of the permanent easements, the Court must consider not only the market value of the property and the amount of land taken, but also the percentage of the original bundle of ownership rights that the owner retains on the encumbered land. ... Takings of temporary easements are measured differently. A landowner must be compensated for the loss of use of property taken by a temporary easement and any impairment of access to the property during the period of construction. ... Some courts have held that the damages are equal to the rental value of the property for the period of occupation. ... This is commonly measured by the rental value of the property as a whole." *Id.* at 322-23. (internal citations omitted).

Therefore, although the issue of just compensation is not before the court, MGT's motion appears to seek relief that is entirely appropriate based on the court's previous orders. That is, in the court's May 26, 2006 Order, the court stated that MGT would have "a temporary right of entry" to conduct the pre-construction activities addressed above. (*See* Case No. 06-255, Docket No. 19 at 2.) The court stated that "permanent injunctive relief and right of entry" for construction activities would not be permitted until MGT met the two preconditions (the FERC and DOEP authorizations), which were met as of July 26, 2007. (*See* Case No. 06-255, Docket No. 23 at 1.) Therefore, it is apparent from this Order that MGT was to have a temporary

6

easement over the Property as early as May 26, 2006 and a permanent easement as of July 26, 2007. Therefore, to the extent that the compensation analysis should be performed differently based on the permanency of the easement in the given time period, MGT's request that the court recognize the distinction seems entirely reasonable.

In response, the landowners spend little time addressing this central issue of whether the date of taking for the permanent easement should be established as July 26, 2007. Rather, much of their briefing suggests that MGT is arguing that there was no compensable "taking" *at all* before July 26, 2007, which, as discussed above, is not correct. (*See* Case No. 06-255, Docket No. 53 at 9-11; Case No. 06-256, Docket No. 51 at 1-4.)

Some landowners do argue that, while the court classified the initial, pre-construction, access as temporary, "at no time after May 26, 2006 did [the landowners] regain control or exclusive use of their property," which, they argue, indicates that the date of the permanent easement should be established as May 26, 2006. (*See* Case No. 06-255, Docket No. 53 at 4; *see also* Case No. 06-256, Docket No. 51 at 3.) This argument is unpersuasive. Not only is establishing July 26, 2007 as the date of taking of the permanent easement entirely consistent with the court's orders in this case, the character of the easement clearly changed as of July 26, 2007. That is, on that date, with the requisite approvals issued, the easement changed from a pre-construction, survey-based, "temporary" easement to a construction-based, pipeline building, "permanent" easement. In sum, establishing July 26, 2007 as the date of taking of the permanent easement is entirely reasonable and consistent with the court's prior orders and the facts of this case.

7

**ORDER**

For the reasons discussed herein, the plaintiff's Partial Motion for Summary Judgment in the above captioned cases (that is, Case No. 06-255, Docket No. 50; Case No 06-256, Docket No. 44; Case No. 06-260, Docket No. 35; Case No. 06-270, Docket No. 35; Case No. 06-271, Docket No. 39; Case No. 06-281, Docket No. 36; Case No. 06-288, Docket No. 33; Case No. 06-290, Docket No. 46; Case No. 06-291, Docket No. 38; Case No. 06-292, Docket No. 35; Case No. 06-299, Docket No. 35; Case No. 06-304, Docket No. 35) is **GRANTED** and July 26, 2007 is established as the "date of taking" for the permanent easement in these matters.

_____
ALETA A. TRAUGER
United States District Judge

8